Good morning. Good morning. Verna Weefald on behalf of Appellant Philip Dorsett. The issue in this case is whether or not Mr. Dorsett was deprived of the effective assistance of counsel when his trial lawyer failed to interview a critical witness who would have supported his claim of self-defense. Now, I realize that this is a state habeas. We have the AEDPA and a lot of hurdles to get over, the primary one being Harrington v. Richter. The California Supreme Court summarily denied the habeas petition without giving any reasons. But I think we can do that. I think the decision was objectively unreasonable. First, we have to consider what are some of the reasons that the California Supreme Court could have summarily rejected this petition. And I'll start with some of the suggestions of the Attorney General. The Attorney General said that there was a trial lawyer did not have to interview Abel Soto because there wasn't any pretrial evidence to warrant such an investigation. That is objectively unreasonable. First, Mr. Dorsett himself, as Strickland v. Washington notes, repeatedly asked his lawyer to interview the two people who were standing with Mr. Fugino when the shooting occurred. The trial lawyer himself had a theory of the case that this was self-defense. He tried to get some hearsay. Counsel, let me ask you a question. So the trial lawyer, Mr. Fall, is that right? Right, Mr. Fall. All right. So he not only didn't interview him, but it looked from the record that he expressly instructed his investigator not to interview them. Now, that extra step puzzles me a little bit. Why would he not only say, well, let's not interview them, but then expressly advise the investigator not to go see them? Well, we don't know what the reason was why he told the investigator not to interview him. But what we do know is that Mr. Fall did make arrangements to try to bring both the Sotos down to Los Angeles County. Mr. Parker also said that once he was assigned to start working on the case, trial was ready to begin and there was very little time to do anything. There could be any number of reasons why he said that. Was there any suggestion by the government as to the answer to Judge Donato's question as to why Fall instructed no interviews? Any suggestion? That's what I'm saying. We don't know. You don't know, but do they know and have they said? Well, the answer that I would give in terms of how that would affect this. Pardon me. Maybe I didn't ask my question clearly enough. I'm sorry. Did the appellee give any reason why Fall made the instruction not to interview? No, he did not. All right. No. In fact, Mr. Parker's declaration says he doesn't know why he was instructed not to interview him. Let me ask you this. As you pointed out at the beginning, since you're not favored with an explanation by the California Supreme Court, we have to try to figure out what could they have been thinking. Is it possible they could have said, counsel, you only have 24 hours in a day and trial is approaching, and they've got to use their resources as best they can, and there was no point in having these people interviewed because they had already been interviewed by the cops, and they already knew, or at least he thought he knew what they were going to say because they had been interviewed, and so they have to use the time they have more productively doing something else. Would that be unreasonable? No. That is definitely unreasonable, and I'll tell you why. Trial lawyers, particularly, say, somebody like Mr. Fall is trying cases back to back, it is deficient performance to rely solely on the investigation of the police, particularly when your client, which is, Strickland v. Washington says, a trial lawyer's investigation and determining whether or not it's reasonable will begin, first and foremost, with what his client tells the lawyer, and here Mr. Dorsett said, there were two guys standing with Fugino, and you should interview them because they will support my defense. The police statements, there were two police statements, and they were inconsistent. The Soto's first said, oh, we were just driving around and we saw him lying on the ground. Then they changed their story and said, oh, just a lone gunman came up and shot them. You have an obligation as a defense attorney to go and talk to these witnesses and find out, well, what did really happen? We're not talking about whether or not you would call the witness because you haven't even talked to them, and case after case after case from both the U.S. Supreme Court and this court say that a lawyer cannot make a strategic decision unless he has thoroughly investigated. We're not saying you have to interview every witness under the sun, but these two witnesses were the most important. Well, these witnesses had already given not only one statement to the police saying we don't know anything about it, we weren't there, but then they had recanted and said, well, we did, and we saw a lone gunman approach Fugino and shoot him in their presence. So they were already impeached by their own contradictions. Isn't that a good reason not to go investigate? They weren't useful as witnesses. That would not be a reason not to interview them. It might ultimately affect a decision not to call the witness, but I want to remind the court that the only evidence put on by the prosecution was far more suspect. We have the two Hermosillo sisters and we have Mayra Hernandez. They were all over the map. They gave inconsistent statements to the police and said that they didn't see what happened. At the preliminary hearing, they gave inconsistent statements about, well, I didn't see or I only assumed that he shot him. And at the trial, on direct examination, the two Hermosillo sisters said, well, I saw Mr. Dorsett shoot this guy. But they were impeached not only by their prior statements, but by their statements on the witness stand. They turned around and said, oh, well, no, actually I was going towards the house and I heard some shots. They were also impeached by how many gunshots they heard. Well, it looks like everybody at the trial, everybody was impeachable. Sometimes all the witnesses, government side and defense side. So why then is the failure to have Mr. Soto appear, why is that prejudicial? I mean, your client had an ample opportunity to hang out all the government witnesses to dry based on their credibility problems. Why would having Mr. Soto there have made such a difference that we can say your client had been prejudiced? Well, let's go to the closing argument of the defense counsel. The defense, Mr. Fall said he faulted the prosecution for not calling the two Sotos. They weren't related. Why? He said, well, they were there because the Hermosillo, all three of the prosecution witnesses said these two guys were there. And he said, well, the reason that they didn't call them is because they would have confirmed what Mr. Dorsett testified to, that Fugino shot first. So here's the jury thinking, hey, the prosecution didn't call these witnesses. Why didn't Mr. Dorsett call these witnesses? I mean, it completely contradicts the theory of the case. You know, representing gang members and shooting, these are tough cases. Couldn't Mr. Fall, his lawyer, have legitimately concluded he had plenty to work with for impeaching the government witnesses and he didn't need what he might have considered the extra baggage of his own impeachable witnesses? Maybe he concluded, not unreasonably, it's a lot easier to attack the government's witnesses and not have to simultaneously defend your own on exactly the same ground that you're attacking the government. So maybe he said, I'm not going to call Mr. Soto, I feel really good about my impeachment. Well, he did a good job of impeaching the witnesses, but that's not enough. It's not enough for a defense attorney to completely rely on the prosecutions and the police investigation, particularly when the failure to conduct a thorough investigation completely is contradicted by your own theory. So the real issue is the failure to investigate, not the failure to call a trial. I'm sorry? The real issue is the failure to investigate, not the failure to call a trial. That's the issue here. I see that I'm running out of time. Thank you. I'd like to save some time for rebuttal. Thank you. Got it. Good morning. Good morning, Your Honors. May it please the Court, Deputy Attorney General Susan Kim for Respondent.  Thank you. Yes, of course. In this case, the District Court properly determined that Petitioner's claim of ineffective assistance of counsel was not an unreasonable application of Strickland. In Strickland itself, the Supreme Court stated that counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In this case, Petitioner's trial attorney could have made the reasonable decision not to interview Abel Soto because I'm really struggling with this because I cannot imagine a situation where it's in any way reasonable for a defense lawyer not even to interview the witnesses who would corroborate his client's story. I just don't get that. I mean, how is that . . . in what practice world is that a smart, good, reasonable decision? Well, in this case, based on the two declarations submitted by Petitioner, first, Parker, the defense investigator, stated in part that trial counsel told him not . . . specifically not to interview Abel Soto as well as Sergio Soto. And second, the declaration by Petitioner himself included language that trial counsel told him it was not necessary to interview Abel Soto. So based on these and also based on tactical reasons, trial counsel could have decided, I already know about Abel Soto. I already know very well what he said to the detectives before in two prior inconsistent statements. The first, which was unhelpful to the defense. And the second, which was actually detrimental to the claim of self-defense. He's a defense lawyer who has a witness who is the friend of the victim. He's basically an adverse witness. And that man is willing to step up and say what the defendant is saying is true. My friend pulled the gun first. I mean, you don't get evidence that that's that powerful in many cases. So how can you say it's reasonable for a lawyer just to dismiss it out of hand based on an affidavit? I believe it's reasonable because of the time frame. The declaration from Abel Soto was from 2010. Petitioner's trial occurred in 2007, and the crimes occurred in 2005. So in 2007, at the time of Petitioner's trial, trial counsel had these two prior inconsistent statements from Abel Soto, which I have mentioned before were unhelpful or detrimental. The first saying, I wasn't there at the shooting at all. I found the victim after he was shot on the ground alone. And the second is I, basically there was a lone gunman that came up and shot the victim. So at that time in 2007, trial counsel could have reasonably decided, even if I interviewed Abel Soto a third time, well, not a third time, but interviewed him in this case, he probably would repeat either the first story, which was I wasn't there, or the second story, which was a lone gunman came and shot the victim. Well, how do you deal with the fact that the record indicates that the defendant himself said to his lawyer, you need to interview these people. You need to go out and interview these people. I mean, the facts are just piling up on Mr. Fallon, not really handling this in a reasonable way. It is correct, Your Honor, that Petitioner's declaration states that he said he told his defense attorney to interview these witnesses, the Sotos. However, it is not from Petitioner that trial counsel was aware of Abel Soto. Trial counsel was already aware of Abel Soto, and in particular, Abel Soto's statements, apart from the fact that Petitioner had told him about him. So trial counsel could have decided, I already know about Abel Soto. Petitioner told me about him, but I already know, plus I already know what he already told the two prior times, the detectives. And trial counsel could have decided, this is probably going to, you know, whatever he says to me, his credibility has been so damaged at this point, he would probably not make a very good defense witness. He would be impeached by the two prior inconsistent statements with whatever statement that he would get from interviewing Abel. Plus he, Abel Soto, as noted in the record, had a prior criminal record. So these credibility issues could have also factored into why defense counsel, trial counsel in this case, decided this is probably not a good defense witness for me. So to interview him during trial, again, when I already know what he said, probably not be helpful to the defense. And I believe that was not division performance on the part of trial counsel in 2007, which was several years before Abel Soto gave his declaration from 2010, Your Honor. How do you distinguish this case from Riley v. Payne? I believe in Riley, this was, Riley v. Payne was a case where it was a self-defense case as well. And the petitioner in that case said there was an associate at the time, Pettis, who was in the area. He didn't see the shooting, but he said something to the effect of, I believe the victim did something threatening to the defendant. But the difference is that in that case, Pettis did not give any pretrial statements to anybody. So the attorney in the Riley case. I don't think that's right, counsel. Is that incorrect, Your Honor? I don't think that's right. I think the magistrate judge found that. I think Riley has references in it to the fact that Mr. Pettis gave conflicting, inconsistent accounts to the police. I apologize if that is incorrect. My recollection is that in the Howard case there was. I mean, Riley cites the Washington Supreme Court as saying, as Pettis admits, he initially misled the police about his knowledge of the incident, which is exactly what Mr. Soto did here. Then I apologize for my error in remembering that case. It's not your error. It's just I think the magistrate judge found that Riley was distinguishable on that ground. I think that's not necessarily correct. But if that falls out, in answer to Judge Bea's question, do you now have any basis for distinguishing Riley? Let's assume that my reading is correct. Okay, Your Honor. And Mr. Pettis did make inconsistent statements. How do you answer Judge Bea's question at that point? In this case, I still believe that Abel Soto has so many credibility issues that counsel could have made the reasonable decision not to witness. But what is the downside of sending an investigator who's named Walker to interview the Soto boys? What's the downside? You might get a third story. You might get a better story. But how does it hurt the defendant to interview these witnesses? Well, in this case, the defense attorney, every defense attorney has limited resources. And he did also present other witnesses. Wait a minute. The affidavit of the investigator doesn't say that Fall instructed him, don't interview Soto. Do something else. Use your time elsewhere. He just said don't interview Soto. So if there was some other investigative task which needed attention as competing with interviewing Soto, I could understand that answer. But where's the evidence that there was some other investigative task for the investigator to do? Well, in this case, because we don't have a declaration from the trial attorney, we don't have specific reasons given by the trial attorney. So we don't have any evidence that there was an alternate task to which he could have been dedicating his time and effort. I believe it can be reasonably inferred that the trial attorney spent some of his resources on other defense witnesses. He presented five other witnesses who lived in the neighborhood of the crime scene who testified about hearing a various number of gunshots. I believe the trial counsel could have believed these witnesses did not have the credibility issues that Abel Soto had. They were fairly neutral in the sense that they lived in the area. They weren't. Can you give me a record cite to that? It's just the defense witnesses. And if you could give me one moment, I could do that, Your Honor. I believe it is from excerpts of record, from appellant's excerpts of record starting at page 1006. One. 1006 to about 1049, so 1049. And this involves about five defense witnesses, one of which was the brother-in-law of Mayra Hernandez, and the other four, Mr. Armstrong, Mr. Ruiz, Mr. Escobar, and Ms. Oliver, who all lived within the general area of the crime scene. And that's either on the same street or just the general area of the crime scene. You know, I think part of what I'm wrestling with with the government's argument is you keep talking about their credibility issues, and he wouldn't have made a good witness, but that's not our question. Our question isn't whether he should have been called to trial. Our question was why wasn't he interviewed? Why wasn't an informed decision made based on an actual interview? He could have interviewed him and not called him at trial, and we wouldn't be here today. The decision whether or not to call him at trial is not what we're dealing with. We're dealing with the fact that it's hard to understand how it's effective counsel to completely pass on interviewing a potential smoking gun witness for the defense. And if you can address that, I'd love to hear your thoughts. Yes, Your Honor. Basically, it's the fact that trial counsel did not know that Abel Soto would change his story to a version that was favorable to the self-defense theory until years after the trial. So in 2007, viewing what trial counsel knew at that time... But he didn't know because he didn't interview him. Yes, Your Honor. He didn't know. He didn't interview him because he believed at the time in 2007, I already know what he said, and it is... But the client says he's going to help me. So at that point, he's put on notice that at least the defendant thinks this guy is going to turn around and do favorable testimony. How do you explain not following up on that after the client says, I now know that he's going to testify on my behalf? Well, I think that the tactics for trial are in the realm of the attorney, and I believe the attorney could have decided, I see what Petitioner is telling me. He's telling me about Abel Soto, and I do have information about Abel Soto. Okay. I see you're out of time. Thank you, Your Honor. Thank you. Thank you, Your Honor. Jocelyn, you've got about a minute left. Very briefly, I have very little time left. I would just go back to Wiggins v. Smith, who said where the trial counsel failed to do something. It's inattention, not a deliberate decision. I think that's what happened here. We need an evidentiary hearing. This court can order an evidentiary hearing, and if there's anything new that comes out that's important, we can stay in a bay and go back and exhaust. Gonzalez v. Wong says that. Hurls v. Ryan, a recent case where they ordered an evidentiary hearing. Why do you need an evidentiary hearing? Don't you just get the writ? Pardon me? I don't understand why you get an evidentiary hearing. If you prevail, shouldn't we just reverse the conviction and say retry him? What's there to develop? We certainly developed it as well as we could. In the alternative, let's say, an evidentiary hearing would be net. Shouldn't that have been done in state court anyway? But certainly outright reversal would be great. Okay. Thank you. Thank you. Ms. Kim, thank you.
judges: Donato, Silverman, Bea